Steven Ibarra, Esq. (SBN: 249642)
LAW OFFICES OF STEVEN IBARRA
6518 Greenleaf Avenue, Suite 28
Whittier, CA 90601
(562) 735-0828
(714) 582-0948 facsimile

Attorneys for Plaintiffs
MARLON STAGGS & CHRISTINE STAGGS

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF LOS ANGELES

| | |
|---|---|
| MARLON STAGGS<br>CHRISTINE STAGGS<br>            Plaintiffs,<br>        vs.<br>MORTGAGE ELECTRONIC<br>REGISTRATION SYSTEMS, INC.;<br>RECONTRUST COMPANY, N.A.;<br>COUNTRYWIDE FINANCIAL<br>CORPORATION; COUNTRYWIDE HOME<br>LOANS, INC.; COUNTRYWIDE HOME<br>LOANS SERVICING, L.P. FKA BAC<br>HOME LOAN SERVICING, L.P.; BANK OF<br>AMERICA, N.A.; BAC HOME LOANS<br>SERVICING L.P.; EDDIE AVAKIAN;<br>LANDSAFE APPRAISAL SERVICES INC.;<br>LANDSAFE, INC.;  HEARN QUALITY<br>ASSURANCE; MARK HEARN; TC<br>APPRAISALS; C. BILL LEE; MARTEL<br>LOFTS LLC; OMRI MERON; AMI REAL<br>ESTATE, INC.; CITIBANK, N.A.;<br>CERTIFICATEHOLDERS OF BEAR<br>STEARNS ALT-A TRUST 2006-7 AS A<br>SEPARATE UNKNOWN LEGAL ENTITY;<br>STRUCTURED ASSET MORTGAGE<br>INVESTMENTS II, INC; WELLS FARGO<br>BANK, NATIONAL ASSOCIATION AND<br>DOES 1-10.<br><br>            Defendants. | Case No.: CV12-1002-CAS(VBKx)<br><br>**PLAINTIFFS' OPPOSITION TO<br>DEFENDANTS' MORTGAGE<br>ELECTRONIC REGISTRATION<br>SYSTEMS, INC., RECONTRUST<br>COMPANY, N.A., COUNTRYWIDE<br>FINANCIAL CORPORATION,<br>COUNTRYWIDE HOME LOANS,<br>INC., BANK OF AMERICA, N.A.,<br>LANDSAFE APPRAISAL SERVICES,<br>INC. LANDSAFE, INC., CITIBANK<br>AND WELLS FARGO BANK, N.A'S<br>MOTION TO DISMISS PLAINTIFFS'<br>COMPLAINT PURSUANT TO<br>FEDERAL RULE OF CIVIL<br>PROCEDURE 12(B)(6)**<br><br>Date: April 2, 2012<br>Time: 10:00 a.m.<br>Dept. 5 |

Plaintiffs Marlon and Christine Staggs ("Plaintiffs") by and through their attorneys of record hereby oppose Defendants Mortgage Electronic Registration Systems, Inc., Recontrust Company, N.A., Countrywide Financial Corporation, Countrywide Home Loans, Inc., Bank of America, N.A., Landsafe Appraisal Services, Inc., Landsafe, Inc., Citibank and Wells Fargo Bank, N.A.'s Motion to Dismiss Plaintiffs' Complaint pursuant to Federal Rules of Civil Procedure 12(b)(6). This opposition is based on all the papers on file with the Court, the arguments set forth, and any arguments made by Plaintiffs' counsel at the hearing currently scheduled for this matter.

Dated: March 12, 2012                    LAW OFFICES OF STEVEN IBARRA


                                By:    _____
                                       Steven Ibarra
                                       ATTORNEYS FOR Plaintiffs
                                       Marlon Staggs and Christine Staggs

TABLE OF CONTENTS

**I.** INTRODUCTION..................................................................................... 8

**II.** BACKGROUND.....................................................................9

**III.** LEGAL STANDARD.......................................................................... 11

**IV.** TENDER OF THE DEBT IS NOT REQUIRED IF THE ACTION ATTACKS THE VALIDITY OF THE UNDERLYING DEBT SINCE IT WOULD CONSTITUTE AN AFFIRMATIVE OF THE DEBT .......................................................................... 12

**V.** PLAINTIFF'S FIRST COUNT PLEADS FACTS SUFFICIENT TO ESTABLISH A CLAIM FOR DECLARATORY RELIEF THAT IS PLAUSABLE ON ITS FACE............ 15

**VI.** PLAINTIFF'S SECOND COUNT PLEADS FACTS SUFFICIENT TO ESTABLISH A CLAIM FOR UNJUST ENRICHMENT................................................................ 17

**VII.** PLAINTIFF'S THIRD COUNT PLEADS FACTS SUFFICIENT TO ESTABLISH A CLAIM FOR WRONGFUL FORECLOSURE.................................................... 18

A. Defendants Erroneously Allege that Only a *Completed* Foreclosure Sale Constitutes Grounds for a Claims of Wrongful Foreclosure.....................................................18

B. Despite Defendants' Reliance on *Gomes*, a State Court Case, Numerous California Federal District Court Cases  Recognize a Right to Claim a Wrongful Foreclosure When There is No Legal Power to Foreclose...........................................................................19

**VIII.** PLAINTIFF'S FOURTH COUNT PLEADS FACTS SUFFICIENT TO STATE A CLAIM FOR TORTIOUS INTERFERENCE ..................................................... 21

**IX.** PLAINTIFF'S FIFTH COUNT SUFFICIENTLY STATES A PROMISSORY ESTOPPEL CLAIMS UPON WHICH RELIEF MAY BE GRANTED ............................. 22

**X.** PLAINTIFF'S SIXTH COUNT PLEADS FACTS SUFFICIENT TO STATE A CLAIM FOR SLANDER OF TITLE. THE QUALIFIED COMMON INTEREST PRIVILEGE DOES NOT APPLY TO THE BENEFICIARY OF A DEED OF TRUST...................................... 23

**XI.** PLAINTIFF'S SEVENTH COUNT FOR DECLARATORY RELIEF-QUIET TITLE WAS NOT OPPOSES IN THE MOTION TO DISMISS.........................................24

**XII** PLAINTIFFS EIGHT COUNT SUFFICIENTLY STATES AN EQUITABLE ESTOPPEL CLAIMS UPON WHICH RELIEF MAY BE GRANTED ............................... 24

**XIII** PLAINTIFF'S NINTH COUNT SUFFICIENTLY STATES A CLAIM UNDER TILA UPON WHICH RELIEF MAY BE GRANTED ................................................................. 26

**XIV** PLAINTIFF'S TENTH COUNT SUFFICIENTLY STATES A CLAIM FOR THE UNLAWFUL, UNFAIR AND FRAUDULENT PRACTICES ARE AT THE CORE OF THE COMPLAINT AND CONSTITUTE SUFFICIENT BASIS TO ESTABLISH VIOLATION OF UNFAIR COMPETITION LAWS ....................................................................................... 28

**XV.** PLAINTIFF'S ELEVENTH COUNT PLEADS FACTS SUFFICIENT TO STATE A CLAIM FOR APPRAISAL VIOLATIONS.…………………………………………………30

**XVI** PLAINTIFF'S TWELFTH COUNT SUFFICIENTLY STATES A CLAIMS UPON WHICH INJUNCTIVE RELIEVE MAY BE GRANTED .................................................... 35

**XVII** PLAINTIFF'S THIRTEEN COUNT SUFFICIENTLY STATES A CLAIMS UPON WHICH RELIEVE UNDER RESPA MAY BE GRANTED.................................................. 35

**XVIII** CONCLUSION ............................................................................................... 37

1

## TABLE OF AUTHORITIES

2
**Cases**

3
[*Ashcroft v. Iqbal*  129 S. Ct. 1937, 1949 (2009).] ................................................................. 13

4
[*Jeffs v. Stubbs*, 970 P.2d 1234, 1244, 1245 (Utah 1998).] ........................................... 13

5
[*Laks v. Coast Fed. Sav. & Loan Assn.*, 60 Cal.App.3d 885, 891, 131 Cal.Rptr. 836 (1976); *see*

6
*Toscano v. Greene Music*, 124 Cal.App.4th 685, 692, 21 Cal.Rptr.3d 732 (2004).] ............... 18

7
[*Lambertini v. Lambertini*, 655 So. 2d 142 (Fla. 3d Dist. Ct. App. 1995).] ................................ 20

8
[*Maryland Cas. Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273, 61 S.Ct. 510, 512 (1941).].. 12

9
[*McKell, et al. v. Washington Mutual, Inc.,* et al. 142 Cal. App. 4th 1457; 49 Cal. Rptr. 3d 227;

10
2006 Cal. App. LEXIS 1436; 2006 Cal. Daily Op. Service 8836; 2006 Daily Journal DAR

11
12639.] ................................................................................................................. 14

12
[Miami Nat. Bank v. Greenfield, 488 So. 2d 559 (Fla. 3rd DCA 1986).] ..................................... 21

13
[*Raedeke v. Gibraltar Sav. & Loan Assn.,* 10 Cal.3d 665, 672,111 Cal.Rptr. 693 (1974).]......... 18

14
[*Youngman v. Nevada Irrigation Dist.*, 70 Cal.2d 240, 249, 74 Cal.Rptr. 398 (1969); *see Lloyd v.*

15
*R.K.O. Pictures, Inc.*, 136 Cal.App.2d 638, 299, 289 P.2d 295 (1955)..................................... 17

16
Ashwander v. Tennessee Valley Authority, 297 U.S. 288, 325, 56 S.Ct. 466, 473, 80 L.Ed. 688,

17
699 (1936) ................................................................................................................. 12

18
*Bell Atlantic Corp. v. Twombly,* 55 U.S. 544 (2007) ..................................................... 9

19
*Berrett v. Stevens*, 690 P.2d 553, 557 (Utah 1984)...................................................... 13

20
*Berryman v. Merit Prop. Mgmt., Inc.* 62 Cal. Rptr. 3d 177, 185 (2007 ..................................... 23

21
Cal. *Penal Code* §532(f)(a)(4) ......................................................................................... 8

22
*California v. McKale,* 25 Cal. 3d 626, 632 (1979). ......................................................... 23

23
*Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.* (1999) 20 Cal.4[th] 163.  23

24
*Cervantes v. City of San Diego,* 5 F.3d 1273 (9th Cir. 1993) ............................................. 9

25
*Cervantes v. Countrywide Home Loans,* 656 F.3d 1034 (2011),................................................ 14

26
*Conley v. Gibson,* 355 U.S. 41, 45-46 (1957)................................................................... 9

27
*Drum v. San Fernando Valley Bar Ass'n,* 106 Cal. Rptr. 3d 46, 49 (2010). ................................. 22

28

Florida Dept. of Health and Rehabilitative Services v. S.A.P, 835 So. 2d 1091 (Fla. 2002); Major
    League Baseball v. Morsani, 790 So. 2d 1071 (Fla. 2001)....................................................... 20

*Gilligan v. Jamco Dev. Corp.,* 108 F. ............................................................................................ 8

*Hartford Fire. Ins. Co. v. California,* 509 U.S. 764, 811 (1993)................................................... 9

*Herring v. Countrywide Home Loans, Inc.,* No. 06-2622, 2007 WL 2051394, at 6 (D. Ariz. 2007)
    .................................................................................................................................................. 14

*Kachlon v. Markowitz,* 168 Cal. App. 4th 316, 333-24 (2008)..................................................... 18

*Kaveh Khast v. Washington Mutual Bank,* 10-02168(IEG)(JMA), 2010 U.S. Dist. LEXIS 13-- 24

*Mabry v. Superior Court,* 185 Cal. App. 4th 208 (2010)............................................................. 10

Major League Baseball v. Morsani, 790 So. 2d 1071 (Fla. 2001). ......................................... 20, 21

*Ohlendorf v. Am. Home Mortg.,* No CIV  S-09-2081 LKK/EFB, 2010 U.S. Dist. LEXIS 31098,
    at 21-24 (E.D. Cal. March 31, 2010), ..................................................................................... 16

*Onofrio v. Rice,* 55 Cal. App. 4th 413, 424, 64 Cal. Rptr. 2d 74 (1997) ........................................ 9

*People v. Casa Blanca Convalescent Homes, Inc.,* 159 Cal. App. 4th 509, 530 (1984). .............. 24

*Rutman Wine Co. v. E.&J. Gallo Winery*, 829 F.2d 729, 738 (9th Cir. 1987) ............................... 9

*Sacchi v. Mortgage Elec. Registration Sys., Inc.* No. CV-11-1658 AHM(CWx), 2011 WL
    2533029, at 10 (C.D. Cal. June 24, 2011)................................................................................ 9

*Sacchi v. Mortgage Electronic Registration Systems, Inc.* No. CV 11-  1658 AHM(CWx), 2011
    U.S. Dist. LEXIS 68007 (CD. Cal. June 24, 2011) ................................................................ 15

*Scheur v. Rhodes,* 416 U.S. 232, 236 (1974) ................................................................................. 7

Southeast Grove Management Inc. v. McKiness, 578 So. 2d 883 (Fla. 1st DCA 1991)............... 20

*Stoller v. Bank of N.Y. Mellon Trust Co.,* ................................................................................... 14

*Tamburri v. Suntrust Mortg. Inc.,* 2011 U.S. Dist. LEXIS 144442 ............................................ 15

*Vogan v. Wells Fargo Bank, N.A.* No. 11-CV-02098 JAM(KJN), 2011 U.S. Dist. LEXIS 132944
    (E.D. Cal. Nov. 17, 2011.) ........................................................................................................ 9

*Weinstat v. Dentsply Int'l, Inc.* 103 Cal. Rptr. 3d 614, 622 n. 8 (2010). ...................................... 23

*Wilson v. S.L. Rey, Inc.* (1933) 17 Cal.App.4th 234,244; *Kendal-Jackson Winery, Ltd. v. Superior
    Court* (1999) 17 Cal.App.4th 970, 978.]................................................................................... 25

**Statutes**

28 U.S.C. §2201 ................................................................................................. 12

28 USC §2201(a) .............................................................................................. 11

*Cal. Civ. Code*   §2924(a)(1) ........................................................................... 15

*Civil Code* §§2924 and 47 ............................................................................... 18

*Civil Code* §47(c)(1) ......................................................................................... 18

*Civil Code* §47(c)(1). ........................................................................................ 18

**Rules**

FRCP Rule 57 ................................................................................................... 12

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.   INTRODUCTION

Through the instant lawsuit, Plaintiffs Marlon and Christine Staggs ("Plaintiffs") will establish-that a concealed affiliated business arrangement between Countrywide and builder/developer Omri Meron and Martel Lofts LLC, and the relationship between Landsafe Appraisals as a subsidiary of Countrywide, led to a collusive inflated appraisal way over true value of the property in violation of USPAP standards which has caused substantial financial harm to Plaintiffs.

Plaintiffs have pled adequate facts and filed with the Court substantial pre-trial evidence and experts which substantiate each and every claim for relief.

In fact, Defendants are no stranger to accusations of inflated collusive appraisals and the damage they have caused as they have been sued by the FDIC, FHFA, investors and insurers over this same issues complained of herein.

Countrywide is no stranger to the accusation of making loans without regard to likelihood of the loans performance.  Countrywide has been sued for originator put backs under breaches of representations and warranties, insurer contract claims, government GSE claims, and investor claims for damages and repurchase of loans.

Plaintiffs will establish that the transaction was tainted with fraud in the factum rendering it void at inception, therefore tender would be ludicrous as it would constitute an affirmation of the debt.

The Complaint sets forth sufficient specific allegations that afford legal remedies, and voluminous factual Exhibits attached to the Complaint as evidence, to establish a statement of the claims for which relief can be granted.

Plaintiffs request that the Court not allow Defendants to turn this Motion to Dismiss into a Motion for Summary Judgment. This is not the phase in the case to resolve the contest between facts or determine the merits of the case.  In reviewing the sufficiency of the claims asserted, the issue *is not* whether Plaintiffs will ultimately prevail, but whether the Plaintiffs are entitled to offer evidence to support the claims asserted. *See Scheur v. Rhodes,* 416 U.S. 232, 236 (1974).

Plaintiff's evidence sets forth the fraud in the factum and concealment of the information throughout which is shown in these Exhibits:

1.  Purchase Agreement
2.  LandSafe Appraisal
3.  LandSafe Review Appraisal
4.  Email requesting Appraisal
5.  RESPA Letter requesting Appraisal

## II.   **BACKGROUND**

On or about August 2, 2006, Plaintiffs executed both a Promissory Note ("Note") and Deed of Trust ("Mortgage") in favor of the originating lender, Countrywide Bank, N.A. which was secured by a Deed of Trust on real property located at 6615 Melrose Avenue, Unit 2, Los Angeles, CA 90038 (hereinafter, the "Property").  The loan was funded on a warehouse line of credit for a Bear Stearns securitization.  The loan was underwritten and pre-sold for securitization.  Countrywide *never* intended to hold the paper.

As of this date, the Plaintiffs are at risk of losing their property by way of a wrongful foreclosure on March 19, 2012 and the Staggs have invested over $759, 649 in this property so the irreparable harm standard weighs in favor of the Staggs.

In comparison, the securitization trust that is purported to hold this loan has suffered no loss, and will suffer no loss from withholding foreclosure until this case is resolved. The pass through rate to the CUSIP investment tranche this loan is pledged to has been paid all along and will continue to be paid (**SEE** Exhibit 46, 47). In fact, the Staggs interest payments already made covered for other defaulted borrowers before default. This is the nature of how the securitization structure functions. Therefore the securitization, Bank of America, MERS, and Citibank can't prove any harm or hardship if they were required to wait for the outcome of this case.

In the foreclosure action filed it was revealed that Citibank, N.A. is acting as trustee of a trust, which claims to be the owner of this Note and Mortgage. This is a legal issue that must be resolved for the following reasons:

(1) The trust must follow the contracts that created it, and all loans were to be assigned by the closing date.  The parties are in violation of this mandatory provision of the contract.

(2) The Defendant's attempted to create a fraudulent assignment of the interest. This document evidence is clear and irrefutable. In fact, the Defendant's did not even attempt to refute it in the Motion to Dismiss thereby admitting this fact.

(3)The investors in this securitization are demanding rescission and damages from the Defendants over the breaches of the duties as set forth in the trust documents and for issues such as defective loans and appraisals, thereby triggering  judicial estoppel.

Based on violations of trust agreement and failure to properly assign the mortgage, this loan was never transferred properly to this trust and as a result the proper party with rights to

1   enforce is not Citibank.  Only the lender can invoke power of sale under the Deed of Trust or an
2   authorized party must show proof that they are the authorized agent.

3          In order to hide this fatal defect, Defendants resorted to covering up the defective
4   transfer into the trust by executing and recording fraudulent and fabricated documentation,
5   including an assignment of deed of trust and substitution of trustee which was signed by a very
6   well-known rob-signer (*i.e.* fraudulent signature; an act of which constitutes a violation of Cal.
7   *Penal Code* §532(f)(a)(4) ). (*See* Complaint, at Pars. 1, 157, 158). Plaintiffs allege profusely
8   throughout the Complaint that this and other multiple acts of deception were done to mislead
9   and deceive both Plaintiffs and this Court into believing that Defendants have an enforceable
10  claim to the debt obligation.

11         Plaintiffs seek to have the Court consider ***all the evidence, after both sides have an***
12  ***opportunity to conduct discovery,*** and make a ruling based on an application of the law to these
13  facts.

14  **III.    LEGAL STANDARD**

15         Motions to dismiss for failure to state a claim under Federal Rules of Civil Procedure,
16  Rule 12(b)(6) are viewed with disfavor, and, accordingly, dismissals for failure to state a claim
17  are "rarely granted." *Gilligan v. Jamco Dev. Corp.,* 108 F.3d 246, 249 (9th Cir. 1997). The
18  standard for dismissal under Rule 12(b)(6) is a stringent one. "[A] complaint should not be
19  dismissed for failure to state a claim unless it appears ***beyond doubt*** that the Plaintiff can prove
20  no set of facts in support of his claim which would entitle him to relief." *See Hartford Fire. Ins.*
21  *Co. v. California,* 509 U.S. 764, 811 (1993) (*quoting Conley v. Gibson,* 355 U.S. 41, 45-46
22  (1957); *Cervantes v. City of San Diego,* 5 F.3d 1273 (9th Cir. 1993) (emphasis added). The
23  purpose of a motion under Federal Rule 12(b)(6) is to test the formal sufficiency of the
24  statement of the claim for relief in the complaint. *See Rutman Wine Co. v. E.&J. Gallo Winery*,
25  829 F.2d 729, 738 (9th Cir. 1987). The complaint must be construed in the light most favorable
26  to the nonmoving party and its allegations taken as true. *See, Scheuer v. Rhodes,* 416 U.S.  232,
27  236 (1974). It is *not* a procedure for resolving a contest about the facts or on the merits of the
28  case. Furthermore, more recently, the U.S. Supreme Court has held that to survive a motion to

dismiss, a complaint must contain sufficient factual matter, accepted as true that would "state a claim to relief that is plausible on its face." *See Bell Atlantic Corp. v. Twombly,* 55 U.S. 544 (2007). This is the standard under which the Court should consider Defendants' Motion to Dismiss on the issue of the viability of Plaintiff's claims. Plaintiffs request that the Court apply the correct standard and dismiss this Motion and allow the proceeding to continue in the manner that is procedurally correct.

**IV.    TENDER OF THE DEBT IS NOT REQUIRED IF THE ACTION ATTACKS THE VALIDITY OF THE UNDERLYING DEBT SINCE IT WOULD CONSTITUTE AN AFFIRMATIVE OF THE DEBT**

Defendants argue that any claim related to a foreclosure that arises in equity must be accompanied by Plaintiffs' credible allegations of tender.

Yet, "the tender rule is not absolute, and a tender may not be required where it is inequitable to do so." *Sacchi v. Mortgage Elec. Registration Sys., Inc.* No. CV-11-1658 AHM(CWx), 2011 WL 2533029, at 10 (C.D. Cal. June 24, 2011) (citing *Onofrio v. Rice,* 55 Cal. App. 4th 413, 424, 64 Cal. Rptr. 2d 74 (1997); *See also, Vogan v. Wells Fargo Bank, N.A.* No. 11-CV-02098 JAM(KJN), 2011 U.S. Dist. LEXIS 132944 (E.D. Cal. Nov. 17, 2011.) "Also, if the action attacks the validity of the underlying debt, a tender is not required since it would constitute an affirmative of the debt." *Onofrio,* 55 Cal. App. 4th 413, 424.  Thus, per *Onofrio, supra,* requiring Plaintiffs to tender the full amount of the indebtedness would be inequitable.

Further Plaintiffs have asserted that the true beneficiary is concealed and that investors are suing Defendants for rescission and damages thereby making it impossible for the Defendants to act as their agent in a foreclosure action.   Bank of America first represented itself as the owner of Plaintiffs' mortgage, but then represented that it had already sold the loan to a third party, Citibank, N.A. as Trustee for the Holders of Bear Stearns Alt-A Trust 2006-7, Mortgage Pass-Through Certificates, Series 2006-7. (Compl., Pars. 138, 145, 149, 157; Exhibit 42, at page 2).

Defendant Mortgage Electronic Registration Systems, Inc. (hereinafter "MERS") recorded an assignment which Plaintiff contests as fraudulently signed by a party with no personal knowledge of the underlying debt or of the records as maintained on the MERS system. This assignment of the loan occurred on August 18, 2011, to a Mortgage Backed Security (hereinafter "MBS") that was prohibited from accepting it because it's closing date was over 4 years prior to the assignment. (Compl., Par. 157; Exhibit 20).

Plaintiffs dispute the underlying debt and have asserted counterclaims and set offs in excess of the amount claimed due and owing.  "[A] tender may not be required where it would be inequitable to do so." (4 Miller & Starr, Cal. Real Estate, supra, Deeds of Trust & Mortgages § 9:154, at pp. 508-509, fn. 86.) "Similarly, when the person making the claim has a counter-claim or set-off against the beneficiary, . . . it is deemed that they offset each other, and if the offset is equal to or greater than the amount due, a tender is not required . . .. Also, if the action attacks the validity of the underlying debt, a tender is not required since it would constitute an affirmative of the debt." (Id. at p. 512, fns. omitted.)

Plaintiffs have stated clear and convincing evidence of unclean hands in this loan transaction and California courts are unanimous on the issue of unclean hands.[1]   California courts of appeal have considered unclean hands in both tort and contract actions. Decisions have made the defense available to preclude conversion or malicious prosecution as well as to bar the foreclosure of a mechanic's lien.[2]   Court opinions broadly echo unclean applicability in all cases and apply to legal as well as equitable claims and to both tort and contract remedies.

Due to unclean hands, fraudulent document creation, fraud in the factum, collusion and an outright corruption of the entire transaction, requiring Plaintiffs to tender the amount due on their loan at this time would be illogical and inequitable given that they dispute the underlying debt and the Defendants legal rights under the loan.

Until the Court determines the facts surrounding the validity of the underlying debt, it would be inequitable to require Plaintiffs to tender the amounts owed. The very essence of the Plaintiff's Complaint surrounds the legitimacy of the underlying debt and the respective rights of the Moving Defendants. Defendants attempt to cloak the "tender rule" over the entire Complaint, and that argument fails. Plaintiff has paid full value of the property if the property value had not been illegally and collusively inflated in a scheme to defraud the Plaintiff. Plaintiff's complaint disputes the underlying debt in its entirety and therefore pursuant to *Onofrio*, *supra* no tender is required.

The fact that the "tender rule" is not "absolute" is consistent with recent developments in California case law regarding foreclosure defense issues. In *Mabry v. Superior Court,* 185 Cal. App. 4th 208 (2010), the California Court of Appeals held that the tender was not required when it would be contradictory to effectuate the requirements of a particular statute regarding loan modifications. *Id. at 225*. Similarly, to require tender on behalf of the Plaintiffs herein would necessarily require the Court to assume that the debt obligation is owed to one or all of the Moving Defendants. Notwithstanding the clear conflict of interest between a law firm's representation of multiple claimant's of Plaintiff's loan, certainly not ALL defendant's can defend a case on tender. Thus, requiring tender is directly at odds with the very purpose of the present lawsuit: a declaration of Plaintiff's duties and Defendant's correlative rights with respect to the Note and Deed of Trust.

## V.   PLAINTIFF'S FIRST COUNT PLEADS FACTS SUFFICIENT TO ESTABLISH A CLAIM FOR DECLARATORY RELIEF THAT IS PLAUSIBLE ON ITS FACE

Paragraphs 59 through 128 of Plaintiff's Complaint set forth clearly and concisely the actual and justiciable controversy upon which the First Count is based. As alleged, it is the

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Plaintiff's position that "a legal and enforceable contract was never entered into." [Complaint: ¶64.]  If such be the case and the Court should so decide, then everything which followed from the inception of this matter would also be deemed unenforceable, including but not limited to the wrongful non-judicial foreclosure sale of the subject property.

28 USC §2201(a) provides that **"In a case of actual controversy within its jurisdiction . . .** any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

FRCP Rule 57 governs the procedure for obtaining a declaratory judgment under 28 U.S.C. §2201.  The fact that a declaratory judgment may be granted "whether or not further relief is or could be prayed" indicates that declaratory relief is alternative or cumulative and not exclusive or extraordinary. A declaratory judgment is appropriate when it will "terminate the controversy" giving rise to the proceeding."

The "controversy" must necessarily be "of a justiciable nature, thus excluding an advisory decree upon a hypothetical state of facts." [*Ashwander v. Tennessee Valley Authority*, 297 U.S. 288, 325, 56 S.Ct. 466, 473, 80 L.Ed. 688, 699 (1936).] The existence or nonexistence of any right, duty, power, liability, privilege, disability, or immunity or of any fact upon which such legal relations depend, or of a status, may be declared. The petitioner must have a practical interest in the declaration sought and all parties having an interest therein or adversely affected must be made parties or be cited. A declaration may not be rendered if a special statutory proceeding has been provided for the adjudication of some special type of case, but general

ordinary or extraordinary legal remedies, whether regulated by statute or not, are not deemed special statutory proceedings.

As to a controversy to invoke declaratory relief, the question is whether there is a "substantial controversy, between parties having adverse legal rights, or sufficient immediacy and reality to warrant the issuance of a declaratory judgment." [*Maryland Cas. Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273, 61 S.Ct. 510, 512 (1941).] The United States Supreme Court has further explained:  A justiciable controversy is thus distinguished from a difference or dispute of a hypothetical or abstract character; from one that is academic or moot. . . . The controversy must be definite and concrete, touching the legal relations of parties having adverse legal interests. . . . It must be a real and substantial controversy admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts. [*Haworth*, 300 U.S. at 240-241, 57 S.Ct. at 464 (citations omitted).]

The "controversy" in this case, as more than sufficiently alleged by Plaintiff, is actual and justiciable.  The parties clearly have adverse legal interests, and Plaintiff is seeking a conclusive decree that Defendants did not have the right to wrongfully foreclose on his property.

Plaintiff has met his obligation "to allege sufficient facts such that their claim is plausible on its face." [*Ashcroft v. Iqbal*  129 S. Ct. 1937, 1949 (2009).]

## VI.  **PLAINTIFF'S SECOND COUNT PLEADS FACTS SUFFICIENT TO ESTABLISH A CLAIM FOR UNJUST ENRICHMENT**

Plaintiff has sufficiently alleged at Paragraphs 130 through 133 of the Complaint the facts which support his claim that Defendants colluded and conspired with each other to, inter alia, inflate the appraisal value of the subject property, thus unjustly enriching Defendants by the total

amount Plaintiff had invested, plus the amount for improvements which he made to the subject property, costs of the loan transaction, and costs to bring this lawsuit. "Whether a claimant has been unjustly enriched is a mixed question of law and fact." "The district court should be granted broad discretion in applying the law to the facts in cases involving claims of unjust enrichment." "The facts underlying unjust enrichment claims vary greatly from case to case, and the doctrine of unjust enrichment was specifically developed to address situations "that did not fit within a particular legal standard but which nonetheless merited judicial intervention." [*Jeffs v. Stubbs*, 970 P.2d 1234, 1244, 1245 (Utah 1998).]

"In order to prevail on a claim for unjust enrichment, three elements must be met. See *Berrett v. Stevens*, 690 P.2d 553, 557 (Utah 1984). First, there must be a benefit conferred on one person by another. *Id.* Second, the conferee must appreciate or have knowledge of the benefit. *Id.* Finally, there must be "the acceptance or retention by the conferee of the benefit under such circumstances as to make it inequitable for the conferee to retain the benefit without payment of its value." The plaintiff must prove all three elements to sustain a claim of unjust enrichment." Plaintiff has more than sufficiently alleged all three of these elements, and has stated a claim for "obtaining restitution based on quasi-contract or imposition of a constructive trust." [*McKell, et al. v. Washington Mutual, Inc.,* et al. 142 Cal. App. 4th 1457; 49 Cal. Rptr. 3d 227; 2006 Cal. App. LEXIS 1436; 2006 Cal. Daily Op. Service 8836; 2006 Daily Journal DAR 12639.]

## VII. PLAINTIFF'S THIRD COUNT PLEADS FACTS SUFFICIENT TO ESTABLISH A CLAIM FOR WRONGFUL FORECLOSURE

### A) Defendant's Erroneously Allege That Only A *Completed* Foreclosure Sale Constitutes Grounds For A Claim of Wrongful Foreclosure

Foreclosure defense is a relatively new concept that necessarily spawned as a result of

the economy's devastating toll on property owners across the Country. Accordingly, some States are allowing wrongful foreclosure claims as a separate and distinct cause of action. *See Herring v. Countrywide Home Loans, Inc.,* No. 06-2622, 2007 WL 2051394, at 6 (D. Ariz. 2007) (recognizing such a claim where the borrower was not in default at the time of foreclosure).

More relevant herein, the Ninth Circuit Court of Appeals, in *Cervantes v. Countrywide Home Loans,* 656 F.3d 1034 (2011), recognized that such a count could be maintained if the Plaintiffs allege that the loan was not in default at the time of foreclosure. *Id at 1044.* Consistent with this ruling, the court in *Stoller v. Bank of N.Y. Mellon Trust Co.,* in considering whether to allow Plaintiff's to claim Wrongful Foreclosure, the Court considered whether Plaintiffs were in default on their loan. *Id at* 2011 U.S. Dist. LEXIS 110238, at page 23.

Here, Plaintiffs allege that they were not in default at the time of the recording of the Notice of Trustee's Sale. (Compl., Pars. 151, 152, 153, 155, 160). Specifically, one of the moving party's herein, Bank of America, N.A., the loan servicing company, was at all times, and still is, making payments on the Plaintiffs' behalf to the investors in conformance with its obligations under the applicable Pooling and Servicing Agreement.  In fact, the Plaintiffs' loan has already been paid to Bank of America when it purportedly assigned it to Defendant Citibank, N.A. Thus, Bank of America, N.A., cannot allege default on the part of Plaintiff's. Therefore, a claim for Wrongful Foreclosure has been established and must survive Defendants' Motion to Dismiss.

B) <u>Despite Defendants' Reliance On *Gomes,* A State Court Case, Numerous California Federal District Court Cases Recognize a Right to Claim a Wrongful Foreclosure When There Is No Legal Power To Foreclose</u>

The Court in *Tamburri v. Suntrust Mortg. Inc.,* 2011 U.S. Dist. LEXIS 144442, succinctly and eloquently analyzed the relevant legal authority regarding the Claim of Wrongful Foreclosure. For example,

> "Other courts have allowed wrongful foreclosure actions to proceed…without relying on §2932.5. Regardless of whether §2923.5 applies, Plaintiff may still assert that only an authorized entity may initiate foreclosure. *See Cal. Civ. Code*

§2924(a)(1) (requiring the notice of default to be issued by the 'trustee, mortgagee, or beneficiary, or any of their authorized agents'). For example, the Court in *Sacchi v. Mortgage Electronic Registration Systems, Inc.* No. CV 11-1658 AHM(CWx), 2011 U.S. Dist. LEXIS 68007 (CD. Cal. June 24, 2011), held Plaintiff had stated a wrongful foreclosure claim against an entity that had 'no beneficial interest in the Deed of Trust when it acted to foreclose on Plaintiffs' home.' The Court  asked, if defendants' argument that the 'recording and execution date is inconsequential and in no way connotes that the DOT's beneficial interest was transferred at that precise time' was accepted, 'how is one to determine whether (and when) the purported assignment was consummated? How could one ever confirm whether the entity seeking to throw a homeowner out of his residence had the legal authority to do so?' 2011 U.S. Dist. LEXIS 68007, [WL] at 6. The court thus distinguished *Gomes* and held that, since the plaintiffs had alleged facts suggesting the foreclosing party had no legal interest in the deed at the appropriate time, there was a valid cause of action.  2011 U.S. Dist. LEXIS 68007, [WL] at 8. Hence, the failure to record an assignment of the deed of trust, even if it were not fatal under § 2932.5, opens the door (as an evidentiary matter) to the claim that there is no valid assignment held by the foreclosing party." *Tamburri*, *supra*, at page 38-39.

Furthermore, as the *Tamburri* Court analyzed, in *Ohlendorf v. Am. Home Mortg.,* No CIV  S-09-2081 LKK/EFB, 2010 U.S. Dist. LEXIS 31098, at 21-24 (E.D. Cal. March 31, 2010), the court held that while "proof of possession of the note" is not necessary to "legally institute non-judicial foreclosure proceedings against plaintiff," Plaintiff still had a viable claim for wrongful foreclosure insofar as he argued that Defendant are **not** the proper parties to foreclose." *Tamburri, supra,* at 38, citing *Ohlendorf, supra,* at 22. The Court noted because the assignments of interest were recorded after the new beneficiary had already issued the Notice of Default, and were simply backdated to be effective before the Notice of Default was issued, Plaintiff could argue the backdated assignments were not valid. *Ohlendorf* at 23. While the Court stated that "California law does not require beneficiaries to record assignments,…the process of recording assignments with backdated effective dates may be improper, and thereby taint the notice of default." *Id.*

In reaching its conclusion that Plaintiff's had alleged a cause of action for Wrongful

Foreclosure, the Court in *Tamburri* stated: "As in *Sacchi, Ohlendorf,* and *Castillo,* in the instant case, there is a backdating issue." *Id. at* 39. The backdating issue was critical to such conclusion because a "party may not foreclose without the legal power to do so." *Id at 48.*

Similarly, here, Plaintiffs have alleged that the foreclosing entity, Citibank, N.A. did not have the legal authority to issue a Notice of Default because, as stated above, the relevant MBS and the contracts that Citibank must abide by forbid taking an assignment after the closing date and taking assignment of a loan in default. This trust closed 4 years prior such that the Plaintiffs' loan was not lawfully deposited into same. To wit, Defendant MERS recorded an assignment of the subject loan (on August 18, 2011) to a Mortgage Backed Security that was prohibited from accepting it because it's closing date was over 4 years prior to the assignment, on October 31, 2006. (Compl., Par. 157; Exhibit 20).

Thus Citibank, N.A. does *not* have the legal power to foreclose against the Plaintiffs' property.

Furthermore, to the extent that the Complaint alleges at multiple points that the MERS' agent, well-known robo-signer Tina Sevillano, who purportedly signed the Assignment of the Deed of Trust, does NOT have the legal authority to effectuate same, the Notice of Default has no legal power over Plaintiff's property with respect to a foreclosure. Thus, the non-judicial foreclosure proceeding is wrongful and unlawful. (Compl., Pars. 138 – 141). Plaintiffs merely are asking for their day in Court to prove this to a jury of their peers.

## VIII.  PLAINTIFF'S FOURTH COUNT PLEADS FACTS SUFFICIENT TO STATE A CLAIM FOR TORTIOUS INTERFERENCE

Defendants claim that the Mortgage Note and Deed of Trust are not a contract and if the documents do not constitute a contract than it is unenforceable.  If that is the Defendants

position than the argument should  end here.

If on the other hand the Court were to find a contract existed, then it was breached in several ways and the Plaintiffs were harmed as fully set forth in the Complaint.  In every contract an inherent duty of good faith and fair dealing exists.  In this case, anything but good faith took place.  Collusion through hidden arrangements which resulted in corruption of the entire process took place and Defendants attempting to enforce this obligation are simply trying to finish the crime by converting the property.

Plaintiffs did not breach the contract by failing to make payments, Defendants created a contract that was void at inception therefore Plaintiff claims that all payments made should be refunded.  Defendant Bank of America ordered Plaintiff to stop making payments in order to qualify for a loan modification. If Bank of America had no intention of completing a loan modification, they acted in bad faith and created this situation of their own doing.  By these actions Bank of America tortuously interfered with the Plaintiffs attempts to perform under the contract.

All defendants had knowledge of the contractual relationship between homeowners and Lenders who transfer the contracts to the owners of the securities. All of these participants in the securitization scheme also know the importance of acquiring the loans at closing of the securities and taking possession of the underlying documents. The contracts for the securitization demand that the investors receive a legitimate contract free of any Federal or State law claims, property appraisal in conformance with USPAP standards, and complete with all required documentation.  In this case, as evidenced by attempts to conceal that they did not have all the legitimate documents, the appraisal was concealed from the Plaintiffs, and fraudulent documents were recorded purporting to assign an interest in the underlying debt.

The Staggs have suffered damage to title, damage to credit, damage to reputation and financial loss in trying to protect his Property, and face going forward consequences of a possible deficiency judgment or other unfair tax consequences and the costs of rebutting and defending them as a direct result of Defendants' actions.

**IX.    PLAINTIFF'S FIFTH COUNT SUFFICIENTLY STATES A PROMISSORY ESTOPPEL CLAIM UPON WHICH RELIEF MAY BE GRANTED**

Countrywide knew that the Staggs were investing over 300,000 in down payment funds, and were acting in detrimental reliance on the appraised value in the transaction. Had the appraisal been for the actual value, the Plaintiffs would have walked away from the deal if Martel Lofts LLC demanded the inflated unsubstantiated value.

Plaintiffs have alleged that Countrywide and LandSafe Appraisals created this collusive non-arms length appraisal for which they knew the Plaintiff would rely and make the investment in the property.

The Plaintiffs were forced by the developer to use his choice of lender which led to the lender choosing the appraiser.   Both Martel Lofts LLC and Countrywide knew that the accuracy of the appraisal was critical to the success of the tender and the legitimacy of the contract as a whole.  The Court may apply promissory estoppel and allow the Staggs to pay only what the property is worth. Tender should be the sum of the difference between money already paid or $678,000 and true market value.

Constructive Trust is one of the remedies that Plaintiff has alleged because the subject property has been wrongfully detained by parties not entitled to enforce the underlying debt via fraudulent document assignments and fraud in the factum regarding the underlying transaction.

Promissory estoppel is "a doctrine which employs equitable principles to satisfy the requirement that consideration must be given in exchange for the promise sought to be enforced." [*Raedeke v. Gibraltar Sav. & Loan Assn.,* 10 Cal.3d 665, 672,111 Cal.Rptr. 693 (1974).]

Plaintiff's Complaint alleges Defendants, in clear and unambiguous language, led

Plaintiff to reasonably and foreseeably believe facts that were not true, to wit: that "the value of the building was sound," upon which Plaintiff relied to make his investment in the property, to his damage. [Complaint, ¶¶181, 182.]

Plaintiff further alleges that Bank of America made a promise to modify the loan if the Plaintiff defaulted which resulted in harm to the Plaintiff after Bank of America initiated foreclosure instead of modifying the loan.

X. **PLAINTIFF'S SIXTH COUNT PLEADS FACTS SUFFICIENT TO STATE A CLAIM FOR SLANDER OF TITLE. THE QUALIFIED COMMON INTEREST PRIVILEGE DOES *NOT* APPLY TO THE BENEFICIARY OF A DEED OF TRUST**

Defendant's rely on *Kachlon v. Markowitz,* 168 Cal. App. 4th 316, 333-24 (2008) for the proposition that ***all*** Moving Defendant's are entitled to the qualified common interest privilege of California *Civil Code* §47(c)(1). However, the *Kachlon* case is very clear that the privilege contained in California *Civil Code* §47(c)(1) extends only to communications or publications by the foreclosing trustee (*i.e.* Recontrust Company). *Kachlon, supra,* at 325 and 345. In that case, the Court of Appeals spent a considerable amount of time tracing the legislative history and the interplay between California *Civil Code* §§2924 and 47. While it did conclude that §2924 makes the common interest privilege applicable to statutory, nonjudicial foreclosure procedures, it did not extend such protection to the actual foreclosing entities, the Kachlons-Appellants (sellers of the property). Thus, each and every one of the Moving Defendants, save Recontrust Company, N.A. cannot claim the privilege herein.

As to Recontrust Company, N.A., the foreclosing entity, the Defendant's correctly point out that the qualified privilege does not apply if malice is alleged. Well, malice *is* alleged at Paragraph 191 of the Complaint under the Count of Slander of Title, the Count at issue specifically herein. Specifically, Defendants recorded fraudulent documents with the County

1    Recorder knowing same to fraudulent and acted with malice therein. (Compl. 157, 158, 190,

2    300).

3

4    Thus, the Plaintiff's have alleged facts sufficient to constitute a claim for Slander of Title.

5

6    **XI.   PLAINTIFF'S SEVENTH COUNT FOR DECLATORY RELIEF-QUIET TITLE**

7    **WAS NOT OPPOSED IN THE MOTION TO DISMISS**

8    The Motion to Dismiss requesting a hearing date for April 2, 2012 failed to request

9    dismissal of Count Seven of the Plaintiff's complaint, therefore it stands in its entirety.

10

11   **XII.  PLAINTIFF'S EIGHTH COUNT SUFFICIENTLY STATES AN EQUITABLE**

12   **ESTOPPEL CLAIM UPON WHICH RELIEF MAY BE GRANTED**

13

14   Plaintiff has more than sufficiently set forth the facts which support this claim for relief.

15   "Citibank, BAC, Bank of America, RECONTRUST, MERS, BSALT 2006-7, and all

16   mangers thereof, knew the truth of missing and defective documents, fraudulent assignments,

17   inflated and collusive appraisals, and agency requirements to act as a fiduciary for the best

18   interest of the investors and the insurers. They are *all* precluded, both at law and in equity, from

19   denying, or asserting the contrary of, any material fact which, by his words or conduct,

20   affirmative or negative, intentionally or through culpable negligence, he has induced another,

21   who was excusably ignorant of the true facts and who had a  right to rely upon such words or

22   conduct, to believe and act upon them thereby, as a consequence reasonably to be anticipated,

23   changing his position in such a way that he would suffer injury if such denial or contrary

24   assertion was allowed. *28 Am Jur 2d Estoppel and Waiver § 28*" [Complaint, ¶274.]

25   "Citibank, BAC, Bank of America, RECONTRUST, MERS, BSALT 2006-7, and all

26   mangers thereof are all estopped, as they remained silent while using each other as a veil of

27

28

secrecy to commit acts of fraud against the borrower, the investor and the insurers. All of these participants had both the duty and the opportunity to speak up or speak out against the prosecution of a foreclosure and enforcement of a legal obligation, as they had *actual* knowledge of an inflated appraisal, investor and insurer loss mitigation guidelines that were not followed, incomplete, missing and defective loan documents, and fraudulent assignments by robo-signer T. Sevillano, and defective MERS records. Their silence put the Staggs at a disadvantage." [Complaint, ¶275.]

Equitable estoppel, sometimes known as estoppel in pais, protects one party from being harmed by another party's voluntary conduct. Voluntary conduct may be an action, silence, acquiescence or concealment of material facts. [*Lambertini v. Lambertini*, 655 So. 2d 142 (Fla. 3d Dist. Ct. App. 1995).] Equitable estoppel is based on principles of fair play and essential justice and arises when one party lures another party into a disadvantageous legal position. *Major League Baseball v. Morsani,* 790 So. 2d 1071 (Fla. 2001). Equitable estoppel is the effect of the voluntary conduct of a party whereby he or she is absolutely precluded, both at law and in equity, from asserting rights which perhaps have otherwise existed, either of property, contract, or remedy, as against another person who has in good faith relied upon such conduct and has been led thereby to change his or her position for the worse and who on his or her part acquires some corresponding right, either of property, contract, or remedy. *See Florida Dept. of Health and Rehabilitative Services v. S.A.P*, 835 So. 2d 1091 (Fla. 2002); *Major League Baseball v. Morsani,* 790 So. 2d 1071 (Fla. 2001). More simply put, equitable estoppel is generally words or conduct which cause another person to believe a certain state of things exists and to consequently change his or her position in an adverse way. *See Southeast Grove Management Inc. v. McKiness,* 578 So. 2d 883 (Fla. 1st DCA 1991). The prime purpose of the doctrine of equitable

estoppel is to prevent a party from profiting from his or her wrongdoing. *Major League Baseball v. Morsani*, 790 So. 2d 1071 (Fla. 2001). Thus, where the words or conduct of one party causes another to forbear to his or her detriment, equitable estoppel may be applied to prevent harm to the innocent party. [*Miami Nat. Bank v. Greenfield*, 488 So. 2d 559 (Fla. 3rd DCA 1986).]

## XIII.   PLAINTIFF'S NINTH COUNT SUFFICIENTLY STATES A CLAIM UNDER TILA UPON WHICH RELIEF MAY BE GRANTED

Title 15 U.S.C. §1641(f)(2) provides:

"Except as provided in section 1635 (c) of this title, in any action or proceeding by or against any subsequent assignee of the original creditor without knowledge to the contrary by the assignee when he acquires the obligation, written acknowledgement of receipt by a person to whom a statement is required to be given pursuant to this subchapter shall be conclusive proof of the delivery thereof and, except as provided in subsection (a) of this section, of compliance with this part. This section does not affect the rights of the obligor in any action against the original creditor."

Plaintiff's claim more than sufficiently states the facts which substantiate Defendants' violation of the Truth and Lending Act (15 U.S.C. §1641), by failing to timely provide Plaintiff with the name, address and telephone number of the owner of the obligation [Complaint, ¶289], and that by the time Defendants did provide Plaintiff with incorrect information, Plaintiff was prevented from pursuing MERS for information regarding the loan [Complaint, ¶¶290 – 292], all to Plaintiff's damage. [Complaint, ¶¶293-295.]

Plaintiff alleges "Staggs asked for this information on September 29, 2011 and again on October 23, 2011. . . . No address or telephone number was provided." [Complaint, ¶289.]

Plaintiff further alleges that "a second response came on November 4, 2011 and stated the full name: CITIBANK . . .  However the address is not correct, it is of WELLS FARGO, not CITIBANK, not MERS, and not the BSALT 2006-7 trust.  No phone number was provided." [Complaint, ¶290.]

Plaintiff next alleged "the RESPA letter that went to WELLS FARGO on October 11, 2011 was responded to by WELLS FARGO on January 26, 2012, and stated that they forwarded the letter to the servicer, BANK OF AMERICA." [Complaint, ¶291.]

"The problem is the parties now claim MERS was the party in interest until August 18, 2011.  This incorrect information prevented the Staggs from pursuing MERS for information regarding the loan." [Complaint, ¶292.]

At this point it is not clear who is the owner of the obligation and who the servicer is as the true facts relating to ownership were concealed by Bank of America, MERS, Citibank, and Bear Stearns after direct request were sent.  Whether or not these Defendants complied with Title 15 U.S.C. §1641(f)(2) is a factual matter and it is clear they did not as the response to the RESPA letters sent clearly show.  In addition, Title 15 U.S.C. §1641(g) mandates that the homeowner receive notice of any assignment transfers of the loan.  This did not occur but a transfer obviously did as evident in the MERS assignment recorded in the County records to foreclose.  As a result of Defendants' RESPA violations, Plaintiff has alleged that he suffered damages. [Complaint, ¶¶294-295.]

**XIV.    PLAINTIFF'S TENTH COUNT SUFFICIENTLY STATES A CLAIM FOR THE UNLAWFUL, UNFAIR AND FRAUDULENT PRACTICES WHICH ARE AT THE CORE OF THE COMPLAINT AND CONSTITUTE SUFFICIENT BASIS**

**TO ESTABLISH VIOLATION OF UNFAIR COMPETITION LAWS**

"The purpose of the Unfair Competition Law is to protect both consumers and competitors by promoting fair competition in commercial markets for goods and services." *Drum v. San Fernando Valley Bar Ass'n,* 106 Cal. Rptr. 3d 46, 49 (2010). Further, the California Supreme Court held that the UCL establishes three varieties of unfair competition acts or practices which are [1] unlawful, or [2] unfair, or [3] fraudulent. *See Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.* (1999) 20 Cal.4[th] 163. Since the UCL is written in the disjunctive, a business act or practice may be alleged to be all or any of the three varieties. *Berryman v. Merit Prop. Mgmt., Inc.* 62 Cal. Rptr. 3d 177, 185 (2007).

In order to state a claim under the unlawful prong, a plaintiff must allege facts to show that anything that can reasonably be characterized as a business practice is also a violation of law. *California v. McKale,* 25 Cal. 3d 626, 632 (1979). To show a violation under the fraudulent prong, a plaintiff must show that members of the public are likely to be deceived by the practice. *Weinstat v. Dentsply Int'l, Inc.* 103 Cal. Rptr. 3d 614, 622 n. 8 (2010). "A plaintiff's burden thus is to demonstrate that the representations or nondisclosure in question would likely be misleading to a reasonable consumer." *Id.* Finally, under the unfair prong, three different tests are currently used by California courts to determine if a practice is unfair. *Drum, supra,* at 53.

Here, Plaintiffs allege that the moving Defendants have engaged in practices that are 1) unfair, 2) deceptive and 3) unlawful. (Compl. Pars. 299 – 301). Defendants have fraudulently executed and recorded an Assignment of Deed of Trust which was done to create the appearance that Defendants had the right to foreclose and to cover up the defective transfer of the debt obligation in order to allow Defendants to collect the debt obligation. Not only was this behavior unfair and fraudulent, it was illegal pursuant to California Penal Code §532(f)(a)(4). (Compl. Pars. 2, 300). This section prohibits any person from filing a document related to a mortgage loan transaction with the county recorder's office that is known to be false, with the intent to defraud. (See Also Compl. Pars. 204 – 208 which relate to the moving Defendants' use

1   of a well-known robo-signer, Tina Sevillano, to which Plaintiff's provide at least three different
2   variations of her signature at Exhibit 20).

3       In addition, Plaintiffs allege that Defendants engage in deceptive business practices with
4   respect to mortgage loan servicing, assignments of notes and deed of trust, foreclosure of
5   residential properties and related matters by demanding and accepting payments for debts that
6   are nonexistent and acting as beneficiaries and mortgage servicers without the legal authority to
7   do so. (Compl. Par. 300).

8       Further, Plaintiff's have sufficiently pleaded that the moving Defendants failed to
9   comply with the Truth In Lending Act ("TILA") found at 15 U.S.C. 1641(F)(2). (Compl. Par.
10  293 – 295.) Pleading that the moving Defendants violated TILA is sufficient to maintain a UCL
11  claim against them under the unlawful aspect of the UCL. *See Vogan, supra*, 2011 U.S. Dist.
12  LEXIS 132944 at p. 13.

13      Finally, Defendants mistakenly confuse the requirements of a cause of action under UCL
14  and, instead, believe that a "misrepresentation" is required and that advising a borrower to miss
15  their mortgage payments for two months in order to be considered for a loan modification is not
16  such a misrepresentation. To defend the claim, Defendant's cite the Home Affordable
17  Modification Program ("HAMP") and a case which purportedly holds that HAMP requires
18  servicers to verify that the mortgage loan is delinquent or default is reasonably foreseeable.
19  However, Plaintiff's have not claimed that they sought assistance through the HAMP program
20  and, in fact, these same moving Defendants allege ineligibility for such program at Page 1 of
21  their Motion when they state that the subject property is an "investment property." Secondly,
22  they case they cite, *Phu Van Nguyen*, cannot stand for the position of anything as it is a case
23  where the District Court granted, without Opinion, a motion to dismiss. The Defendants are just
24  wrong on this point and it should be summarily discounted.

25      On the other hand, some District Courts *are* allowing UCL claims to proceed where
26  lenders are encouraging borrowers to default before being considered for a loan modification.
27  For example, in *Kaveh Khast v. Washington Mutual Bank,* 10-02168(IEG)(JMA), 2010 U.S.
28  Dist. LEXIS 13--, the United States District Court for the Southern District of California, in

granting Plaintiff's Temporary Restraining Order, held that the same conduct described above "appears to be 'immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers,' and thus satisfies the UCL's 'unfair' prong." *Khast,* at page 5 of the Order Granting Plaintiff's Motion for a Temporary Restraining Order, *citing People v. Casa Blanca Convalescent Homes, Inc.,* 159 Cal. App. 4th 509, 530 (1984). The *Khast* court continued that "Moreover, a reasonable consumer is likely to rely on representations by a bank's agent; thus, such conduct also violates the [UCL]." *Id. p.* 5.

Plaintiffs have alleged with specificity sufficient conduct on the part of the Defendant's to establish a claim for violation of California's Unfair Competition Laws.

## XV.    PLAINTIFF'S ELEVENTH COUNT PLEADS FACTS SUFFICIENT TO STATE A CLAIM FOR APPRAISAL VIOLATIONS

Contrary to assertions by Defendants that no California or Federal law exists, as stated in the Complaint the appraisal was in violation of California Administrative Code, Title 10, section §§3701, 3702(a)(1), civil code §§1566, 1689(b)(1) and 1689(b)(7), California Business and Professions Code Division 4, Part 3, Sections 300 et seq., California Business and Professions Code Division 4, Part 3 Sections §11300 et seq., California Business and Profession Code 11323, and California Code of Regulations Title 10, Chapter 6.5, Sections §3500 et. seq., Title 12 Code of Federal Regulations 12 C.F.R. § 33.44-45, requiring appraisals in federally related transactions to conform to the Uniform Standards of Professional Appraisal Practice, Title 12, Code of Federal Regulations Section 564.5. 12 U.S.C. §1844(b), and 18 U.S.C. §1014. (Compl., Par. 306, 307, 310, 311, 313, 314, 316, 317, 318 and 319).

Plaintiffs intend to call an expert witness at trial who will testify as to the appraisal's non compliance with Federal and California laws.

The facts that are undisputed and uncontested in Defendants motion to dismiss are as follows:   Countrywide's captive subsidiary LandSafe controlled the appraisal; TC Appraisals is not a licensed appraiser; an affiliated business arrangement existed with Meron and Martel Lofts LLC; and that the Plaintiff paid $1000 for an appraisal that was concealed from him even after several requests. ( **SEE** Exhibits 28, 29, 31, 36, 39, 42, 43)

The only defense is that the appraisal was an arm's length, independent evaluation of the subject property, and that no affiliated business arrangement exists or was concealed from the Plaintiff. This is the only fact that the Defendant fail to assert.

Plaintiffs have sufficiently pled that the collusion and concealment acts were wrongful conduct perpetrated by Countrywide, Bank of America, Landsafe Appraisal Services, LandSafe Inc.,  Hearn Quality Assurance, and unlicensed TC Appraisals. (Compl., Par. 1, 4, 49 -54 and 307, ) Defendants have not argued in the Motion to Dismiss that concealment and collusion did not take place, they simply focus on the misguided notion that no laws were broken. Plaintiff  is clear that these parties violated the standard of ordinary care, and USPAP standards governing appraisals, FIRREA, and acted in collusion with the builder/developer Omri Meron and Martel Lofts LLC.

The appraisal, which is Exhibit 6A and 6B, and comps ordered by Plaintiff 6C clearly show that inappropriate comparables were used to justify a value that did not exist. The comparables used  were homes with high end finishes in more upscale neighborhoods.
The builder/developer created an agreement (Compl., Par. 65) to lock in the Plaintiff and force him to use Countrywide, who he knew would justify the value. The Plaintiff had no idea of the scheme that was unfolding.

Defendants cite *Nymark*, however it is anything but applicable because Plaintiff asserts that the appraisal was collusive and not in the ordinary scope of making a loan, but made for the

sole purpose of justifying an inflated value to commit securities and insurance fraud selling the loan on the secondary market. Countrywide was not the lender, but simply a funder on a warehouse line for a Bear Stearns securitization with no skin in the game.

Defendants also make an insane argument that somehow Plaintiff was the beneficiary of the lender's performance in the form of over a million dollars in loan proceeds. In fact, the Plaintiffs have already paid out $759,649(Compl., Par. 52), over or at least at the true property value, and are still on the hook for a loan on a property which the value didn't exist to justify it. For this unconscionable act, Defendants are liable for damaging the Plaintiffs. The true beneficiary of the ill gotten gains from the inflated appraisal is  the party that Countrywide was in collusion with,  Omri Meron and Martel Lofts as Countrywide wrote a check to them at closing for $780,000.  (Compl., Par. 107)

Countrywide is not a stranger to allegations of false inflated and coercive appraisals. Numerous investigations and insiders have come forth to detail the exact conduct which took place in this case. (Compl. 76-98)

In re: *Howard v. Am. Online, Inc.,* 208 F.3d 741, 749 (9th Cir. 2000) the court found that it did not matter whether plaintiffs themselves could bring securities fraud claims, that defendants' arrangement to inflate appraisals was connected with the sale of home loans in the secondary market and that defendants' secondary market sales benefitted their arrangement by providing profits in which they shared.

Plaintiffs allegation of inflated appraisal and collusion also violate California's UCL, a "person who has suffered injury in fact and has lost money or property as a result of unfair competition" may seek injunctive relief including restitution. Cal. Bus. & Prof. Code § 17204. Unfair competition includes "any unlawful, unfair or fraudulent business act or practice." Id. § 17200. "With respect to the unlawful prong, virtually any state, federal, or local law can serve as

the predicate for an action." People ex rel. Bill Lockyer v. Fremont Life Ins. Co., 104 Cal. App. 4th 508, 515 (Ct. App. 2002) (quotation and emphasis omitted).  Although the affirmative RESPA claim would be time barred, the Countrywide-Martel Lofts LLC joint venture and/or affiliated business arrangement was an impermissible "affiliated business arrangement." See 12 U.S.C. § 2607(c)(4).

Appraisal problems were made perfectly clear when concerned Real Estate Appraisers[3](11,000 signatures should be evidence enough of an industry wide problem)  from across America signed a petition and sent it to Mr. Ben Henson - Executive Director of the Appraisal Subcommittee (ASC) Federal Financial Institutions Examination Council.  The jist of the petition was interference by lenders with the "independent judgment" of appraisers in performing real estate appraisals. The appraisers stated that Lenders (banks, savings and loans, mortgage brokers, credit unions and loan officers in general; not to mention real estate agents), as a normal course of business, apply pressure on appraisers to hit or exceed a predetermined value.

This pressure comes in many forms and includes the following:

- the withholding of business if we refuse to inflate values,
- the withholding of business if we refuse to guarantee a predetermined value,
- the withholding of business if we refuse to ignore deficiencies in the property,
- refusing to pay for an appraisal that does not give them what they want,
- black listing honest appraisers in order to use "rubber stamp" appraisers, etc.

Specifically the appraiser requested that the FFIEC take action as follows:  "We request that action be taken to hold the lenders responsible for this type of violation and provide for a penalty

---

[3]

on any person or business who engages in the practice of pressuring appraisers to do dishonest appraisals that do not provide for independent judgment. We believe that this practice has adverse effects on our local and national economies and that the potential for great financial loss exists. **We also believe that many individuals have been adversely affected by the purchase of homes which have been over-valued**." Emphasis Added

Throughout the Complaint, unclean hands on behalf of the Defendants is clear, especially as it relates to the origins of the transaction which begin with a property appraisal.  Without an appraisal at full value the sale would have never been consummated. Had the Plaintiffs known that the value did not exist they would not have purchased the property. Omri Meron and Martel Lofts LLC listed the property at that value because they knew that through the affiliations with Countrywide the value would always come right up to the asking price, and it was they who walked away with the inflated value funds. Countrywide took their profits through transaction fees, and then selling the loan to Bear Stearns and retaining servicing rights.  The Plaintiffs are stuck holding an empty sack and in fact are out $759,649, the same amount as the inflation of the property.  California has long recognized the maxim that "No one can take advantage of his own wrong." (Civ. Code. § 3517.) Put another way, "[h]e who comes into equity must come with clean hands." (See *Wilson v. S.L. Rey, Inc.* (1993) 17 Cal. App.4th 234, 244; *Kendall-Jackson Winery, Ltd v. Superior Court* (1999) 76 Cal. App.4th 970, 978.) The doctrine promotes justice by making a plaintiff answer for its own misconduct in the action. It prevents "a wrongdoer from enjoying the fruits  of his transgression." [Citation omitted.] [At p.p. 978-970.]

Therefore the transaction was void at inception due to the fraud in the factum and remedies for damages are available to the Plaintiffs in the nature of recoupment and set offs.

XVI.   **PLAINTIFF'S TWELFTH COUNT SUFFICIENTLY STATES A CLAIM UPON WHICH INJUNCTIVE RELIEF MAY BE GRANTED**

Plaintiff has stated facts supporting a claim that Defendants' conduct in this matter constituted unclean hands sufficient to enjoin Defendants from foreclosing on the subject property, as such unclean hands is an absolute bar to foreclosure, and even cites authority to support this claim.  "California has long recognized the maxim that "No one can take advantage of his own wrong." (Civil Code §3517.)  Put another way, [h]e who comes into equity must do so with clean hands." [See *Wilson v. S.L. Rey, Inc.* (1933) 17 Cal.App.4[th] 234,244; *Kendal-Jackson Winery, Ltd. v. Superior Court* (1999) 17 Cal.App.4[th] 970, 978.]  The doctrine promotes justice by making a plaintiff answer for its own misconduct in the action.  It prevents a "wrongdoer from enjoying the fruits of his transgression." [Citation omitted.] [At pp. 970-978.] [Complaint, ¶323.]

XVII.  **PLAINTIFF'S THIRTEENTH COUNT SUFFICIENTLY STATES A CLAIM UPON WHICH RELIEF UNDER RESPA MAY BE GRANTED**

Plaintiff's claim sufficiently states facts alleging a violation of RESPA, 12 U.S.C. § 2605(e), against Defendants.  RESPA permits borrowers to send a qualified written request ("QWR") to the loan servicer of a federally regulated mortgage loan requesting information relating to the servicing of such loan.  § 2605(e)(1)(B). Within twenty days of receiving a QWR, the servicer must acknowledge receipt of the QWR with a written response. Id. § 2605(e)(1)(A).

Plaintiff has alleged:

"Countrywide Bank and Countrywide Home Loans failed to make available for inspection by Plaintiffs at or before the settlement the form required under 12 U.S.C. §2603 (HUD-1, Uniform Settlement Statement).

Bank of America has failed to respond properly or timely to the Staggs' letters as required pursuant to Title 12 § 2605(e)(A). Bank of America had a duty to respond as required under Title 12 §2605 (2)(A)(B)(C) which they did not do.

Specifically, on September 29, 2011, the Staggs sent a Qualified Written Request ("QWR") letter to Bank of America. **SEE** Exhibit 35.

The QWR contained information to enable Bank of America to identify Plaintiffs' loan and also contained requests for information of the loan, specifically the identity and contact information of the creditor of Plaintiff's Note, a full accounting of all funds and an advisement that Bank of America was never authorized to include property tax within the monthly payment structure, which it was doing.

Bank of America did not acknowledge the receipt of Plaintiffs' QWR within five days of receipt, as required by Dodd-Frank Act.

Because the loan is subject to RESPA, the Dodd-Frank Act, and Regulation X, all Defendants were required to comply with the Dodd-Frank Act.

Defendants violated Section 6 of Regulation X upon receipt of Plaintiffs' QWR by their actions including, but not limited to: (a) failure to make appropriate corrections in the account of the borrower, including the crediting of any late charges or penalties, and transmitting to the borrower a written notification of the correction; and (b) failure to protect Plaintiffs' credit rating upon receipt of Plaintiffs' QWR by furnishing adverse information regarding payment to credit reporting agencies as defined in §603 of the Fair Credit Reporting Act, 15 U.S.C. §1681(a). Bank of America and BAC Home Loans Servicing, LP violated 12 U.S.C. §2605 and the Dodd-Frank Act and subject to statutory damages, civil liability, penalties, attorneys' fees and actual damages. *See* 12 U.S.C. §2605 and the Dodd-Frank Act.

The actual and pecuniary damages include, but are not limited to, the over calculation and overpayment of interest on Plaintiffs'' loan, the costs of repairing Plaintiffs' credit, the reduction and/or elimination of Plaintiffs' credit limits, costs associated with removing the cloud on their Property title and setting aside the trustee's foreclosure proceedings, and attorneys' fees and costs, in an amount to be proven at trial." [Complaint, ¶¶338-346.]

## XVIII.   **CONCLUSION**

Plaintiffs do not blame Defendants for the loss of value in the property, they blame Defendants for leading them to believe the property had the value to begin with.  The Complaint is anything but vague allegations and contains facts and exhibits which clearly support the Complaint.  Defendants  argument is not that they did not engage in such practices or violate laws meant to protect consumers and the overall integrity of the real estate market, they instead claim only that tender must be offered to challenge those violations of law.  As fully set forth herein and in the Complaint, tender is not required as it would be inequitable and the Plaintiff challenges the underlying debt.  Any deficiencies in the pleadings can be corrected and the Court should not dismiss any causes of action without allowing amendment of the Complaint at this stage.

Dated: March 12, 2012                    LAW OFFICES OF STEVEN IBARRA

                                By:   _____
                                      Steven Ibarra
                                      ATTORNEYS FOR Plaintiffs
                                      Marlon Staggs and Christine Staggs

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22

PROOF OF SERVICE

23
24

I, Emanuel Rose, declare as follows:

25
26
27
28

I am employed in the County of Los Angeles, State of California. I am over the age of eighteen (18) and not a party to the within action. My business address is 6518 Greenleaf Avenue, Suite 23, Whittier, California 90601.  I am readily familiar with the practices of Law Office of Steven Ibarra, for collection and processing of correspondence for mailing with the United States Postal Service. Such correspondence is deposited with the United States Postal Service the same day in the ordinary course of business.

On March 12, 2012, I served the within **PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS COMPLAINT OF DEFENDANTS MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.; RECONTRUST COMPANY, N.A.; COUNTRYWIDE FINANCIAL CORPORATION; COUNTRYWIDE HOME LOANS, INC.; BANK OF AMERICA, N.A.; LANDSAFE APPRAISAL SERVICES, INC.; AND LANDSAFE, INC.; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** on all interested parties in this action as follows:

[X] by placing [ ] the original [X] a true copy thereof enclosed in sealed envelope(s) addressed as follows:

**SEE ATTACHED SERVICE LIST.**

[X] (BY MAIL SERVICE) I placed such envelope(s) for collection to be mailed on this date following ordinary business practices.

[ ] (BY PERSONAL SERVICE) I caused to be delivered such envelope by hand delivered to the office of the addressee.

[ ] (BY FACSIMILE)

[X] (BY ELECTRONIC MAIL)

[X] (FEDERAL) I declare that I am employed in the office of a member of the bar of this court at
whose direction the service was made.

[X] I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on March 12, 2012, at Whittier, California.

_____
EMANUEL ROSE

**SERVICE LIST**

BRYAN CAVE LLP
Brian Recor, Esq. (SBN 229091)
M. Angela Buenaventura, Esq. (SBN 264130
Santa Monica, CA 90401-2386
Telephone: (310) 576-2100
Facsimile:   (310) 576-2200
*Attorneys for Defendants,*
*Mortgage Electronic Registration Systems, Inc.;  Recontrust Company, N.A.;*
*Countrywide Financial Corporation; Countrywide Home Loans, Inc.;*
*Bank of America, N.A.; Landsafe Appraisal Services, Inc.; and Landsafe, Inc.*

1  MAYER BROWN LLP
2  JOHN NADOLENCO (SBN 181128)
   STEVEN E: RICH (SBN 198412)
3  350 South Grand Avenue, 25th Floor
   Los Angeles, CA 90071-1503
4  Telephone: (213) 229-9500
   Facsimile: (213) 625-0248
5  *Attorneys for Defendant, Citibank, N.A.*
6
7  MEYERS McCONNELL REISZ SIDERMAN
   KELLY McMAHON HAGEMANN (SBN 241069)
8  11859 Wilshire Blvd 4th Fl
   Los Angeles, CA 90025
9  Telephone: (310) 312-0772
   Facsimile:    (310) 312-0656
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28